```
         IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF OHIO
                   EASTERN DIVISION
```

Christina M. McKinney,            :

       Plaintiff,           :

    v.                          :       Case No.  2:15-cv-2351

Commissioner of Social Security,      JUDGE GREGORY L. FROST
                                    Magistrate Judge Kemp
       Defendant.            :

                    REPORT AND RECOMMENDATION

                    I.   Introduction

    Plaintiff, Christina M. McKinney, filed this action seeking review of a decision of the Commissioner of Social Security denying her application for supplemental security income.  That application was filed on January 17, 2012, and alleged that Plaintiff became disabled on February 12, 2008.

     After initial administrative denials of her claim, Plaintiff was given a hearing before an Administrative Law Judge on November 15, 2013.  In a decision dated March 10, 2014, the ALJ issued a decision denying benefits.  That became the Commissioner's final decision on April 11, 2015, when the Appeals Council denied review.

    After Plaintiff filed this case, the Commissioner filed the administrative record on August 17, 2015. Plaintiff filed a statement of specific errors on September 16, 2015, to which the Commissioner responded on December 18, 2015.  Plaintiff filed a reply brief on January 1, 2016, and the case is now ready to decide.

      II.  The Lay Testimony at the Administrative Hearings

    Plaintiff, who was 29 years old as of the date of the hearing and who is a high school graduate with some college work, testified as follows.  Her testimony appears at pages 120-149 of the administrative record.

Plaintiff testified that she had taken some online classes beginning in July, 2012, but had withdrawn from that program. She explained that she was having trouble with the math required and determined that she could not do the externship which accompanied the program. She had not looked for work in that time frame. In 2004, she worked at Dollar General, a job which lasted about a year. She ran a cash register, unloaded trucks, and stocked shelves. She had also worked in the deli department at a Kroger store for several months. Through the Ohio Works First program, she was assigned to work at a Salvation Army location sorting and hanging clothes, but she could not do that work.

According to Plaintiff, the reasons she could not work included loss of sensation, numbness, tingling, and weakness in her right arm, which caused her to be unable to grasp objects and to drop things. A 2011 surgery did not improve her condition. She had several cervical vertebrae fused as well, but that was not as helpful as she and her doctor had hoped. She had trouble bending her neck to read and also sitting, standing, or walking for any length of time, which related not only to her neck issue but to problems throughout her spine. She had undergone injections in her lower back and was scheduled for an additional treatment on the nerve in that area.

Plaintiff described constant pain which at times reduced her to tears. She often had to lie down and use a heating pad for relief. Also, she experienced depression and anxiety. Those conditions caused her to have panic attacks in groups of people, even as small as six or seven. Plaintiff told the ALJ she had weekly panic attacks and they typically lasted an hour. She did not sleep well at night and would lie down every day. She also suffered from memory lapses. She was able to relate to the people she was living with and with her grandmother and other

family members.  She left her house to attend medical appointments for herself and her son.

On a typical day, Plaintiff took care of her young son, although she had help doing that.  She helped out with some household chores and occasionally did grocery shopping.  She also read books and used a computer to access Facebook and use email.  Plaintiff said that she could sit for 45 minutes, stand for an hour before having to lie down, and walk about an hour over the course of a day.  She had experienced suicidal thoughts in the past.  She was not able to lift her son, who weighed 40 pounds.

### III.  The Medical and Educational Records

The medical and educational records in this case are found beginning on page 317 of the administrative record.  The pertinent records - primarily those relating to Plaintiff's condition after her application date of January, 2012 - can be summarized as follows.

Plaintiff does have a long history of psychiatric care, as noted in a discharge summary dated May 27, 2010, and reflected in various treatment notes before that date.  At that time, her diagnoses included major depressive disorders with psychotic features, alcohol abuse, and borderline personality disorder.  She had been treated for hallucinations and suicidal thoughts.  (Tr. 421-22).  She had another short psychiatric hospitalization in 2011, again for suicidal ideation along with increased depression, but was discharged with a GAF of 60.  (Tr. 549-550).

Dr. Hammerly, a psychologist, conducted a consultative evaluation on April 3, 2012.  Plaintiff explained that the bases for her claim of disability included panic attacks, anxiety, and problems with her neck and shoulder.  She reported a history of childhood abuse and also having been in special education classes in high school.  She had assistance managing her finances.  Dr. Hammerly observed that Plaintiff had a downcast mood and a

restricted affect and that she experienced feelings of hopelessness and worthlessness from time to time. She reported panic attacks and several psychotic episodes. Dr. Hammerly diagnosed major depression of moderate severity and rated Plaintiff's GAF at 55. He thought that she was in the borderline range with respect to understanding and carrying out instructions and maintaining attention and concentration. He also said she would have problems relating to coworkers and supervisors and would "be expected to withstand the daily psychological pressures of work with a decreased degree of success," particularly in the face of a changing work environment. (Tr. 621-31). A second evaluation was done by Dr. Dubey on September 6, 2012. He noted that Plaintiff reported feeling "okay and depressed" and had problems sleeping. She also reported anxiety since childhood. Plaintiff showed an exaggerated presentation and she was tense, irritable, negativistic, and avoidant. She said she was benefitting from mental health treatment. Dr. Dubey thought she was stable and had no problems with simple and multistep directions or questions. He rated her GAF at 55 and thought she would be able to deal with simple instructions in the workplace, including paying attention to them, would have moderate issues with coworkers and supervisors, and would also have moderate issues dealing with work pressure. (Tr. 755-63).

On July 13, 2013, Plaintiff's counselor, Todd Warren, filled out a form rating Plaintiff's mental capacity for work. He said that, in his opinion, she had marked or extreme limitations in all areas of social interaction, sustained concentration and persistence, and adaptation. He believed she would deteriorate under work stress and would miss five or more days per month due to her psychological condition. (Tr. 846-48).

In August, 2013, Plaintiff was again hospitalized for psychological symptoms. She reported suicidal thoughts and her

GAF upon admission was rated at 30.  It is unclear how long that admission lasted but it was estimated to be 3-5 days.

State agency reviewers expressed opinions about Plaintiff's psychological capacity based on some of these records.  Dr. Goldsmith concluded, on April 16, 2012, that Plaintiff was limited to simple tasks which were not fast paced and did not have strict production demands.  She could also have only occasional and superficial interpersonal contact and was limited to working in an environment with infrequent changes.  (Tr. 173-75).  Dr. Swain later concurred in that assessment.  (Tr. 194-96).

Plaintiff had arthroscopic surgery on her right arm and shoulder in 2011 in order to repair a rotator cuff tear.  At a six-month followup visit, she reported reinjuring her shoulder and an increase in pain.  There was still some tenderness over the subacromial space but range of motion and strength were good.  She was given an injection for the pain, and physical therapy was recommended.  (Tr. 596).

Emergency room notes from February 11, 2012, show that Plaintiff was treated on that date for cervical sprain and strain.  She had apparently fallen and hit her neck on a crib.  A little more than a month later she had neck surgery, but it was for degenerative disc disease at C6-7.  The surgery went well and she was discharged in stable condition.  On June 20, 2012, however, she was seen at the Pain Management Consortium of Central Ohio complaining of pain in the back, neck, and shoulders, and stating that she could not pick up her son.  At that time, she was working 20.5 hours per week through OWF. Limitations were noted in movement of the right shoulder and the fingers on both hands, and she had diminished reflexes in many areas.  Flexion and extension of the cervical spine were not intact.  (Tr. 711-13).

Plaintiff's primary physician during this time was Dr. Turner, and there are office notes documenting her treatment of Plaintiff as well as many emergency room treatment notes from 2012-13.  On August 9, 2013, Dr. Turner completed a residual functional capacity questionnaire indicating that Plaintiff could only stand, walk, and sit for a total of 3.5 hours in a workday, could lift up to ten pounds but do so rarely and not in a work setting, could not squat or crawl, and would deteriorate under stress and was likely to have five or more unscheduled absences from work each month.  (Tr. 850-53).

There were two state agency physicians who commented on Plaintiff's physical residual functional capacity.  Dr. Teague, on March 27, 2012, concluded that Plaintiff could do a limited range of light work with various postural limitations, and that she was limited in her ability to reach overhead, in front, or laterally with her right arm.  (Tr. 171-73).  Dr. Stroebel reached the same conclusions on August 14, 2012 except that he added environmental limitations due to asthma and restricted her from working around heights or machinery and doing commercial driving.  (Tr. 192-94).

### IV.  The Vocational Testimony

Eric Pruitt was  called to testify as a vocational expert at the administrative hearing.  His testimony begins at page 149 of the administrative record.

Mr. Pruitt described Plaintiff's past employment as a sales clerk at Dollar General as light and semi-skilled.  The Kroger's job was a combination position and was unskilled and either light or medium.

Mr. Pruitt was then asked some questions about someone with Plaintiff's background and who could work at the light exertional level.  That person could not climb ladders, ropes, or scaffolds and had to avoid exposure to hazards like dangerous machinery or

unprotected heights.  He or she could occasionally crawl and frequently reach overhead with the right arm, and was limited as to frequent exposure to dust, fumes, odors, gases, and poorly ventilated areas.  Also, the person could do simple repetitive tasks in a relatively static work environment where therewere infrequent changes in duties or processes and the work did not require more than occasional contact with others, nor did it involve fast pace or strict production demands.  Mr. Pruitt said that someone with those restrictions could work as a deli cutter and slicer, and also could be a routing clerk, label coder, and mail clerk.  Those jobs could not be done, however, by someone who could only occasionally use their dominant hand and arm for handling, feeling, and fingering.  Such a person could work at the light level as a furniture rental clerk, groover and stripper, or blending paint tender even with those restrictions.  Only a few sedentary jobs were consistent with those restrictions - surveillance system monitor and call out operator.

Lastly, Mr. Pruitt was asked about the job possibilities for someone who was as limited as Plaintiff testified.  He said there were no jobs available to such a person.  The same was true for someone who could lift ten pounds on a rare basis and not in a work setting, who had five unscheduled absences in a month, and who had to take an additional one-hour break during the work day.  Additional work-preclusive restrictions included being unable to perform at a consistent pace for up to half the work day, being unable to respond appropriately to changes in the work setting, and being off task for fifteen percent of the day (assuming that the person was limited to unskilled work).

    V.   <u>The Administrative Law Judge's Decision</u>

The Administrative Law Judge's decision appears at pages 88-107 of the administrative record.  The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff had not engaged in substantial gainful activity since her application date of January 17, 2012.  Going to the second step of the sequential evaluation process, the ALJ concluded that Plaintiff had severe impairments including degenerative disc disease of the lumbar spine, status post cervical fusion, status post two right shoulder arthroscopies, asthma, major depression, a generalized anxiety disorder, a personality disorder, and borderline intellectual functioning.  The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to step four of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform light work with limitations.  They included the ability to crawl only occasionally, to reach laterally, forward, and overhead with the right arm frequently, to have frequent exposure to dust, fumes, odors, gases, and poorly ventilated areas, and never to climb ladders, ropes, or scaffolds or to work around hazards such as unprotected heights or dangerous machinery. From a psychological standpoint, Plaintiff could perform simple, repetitive tasks in a relatively static work environment where there are infrequent changes in duties and processes, where the work does not require more than occasional contact with others, and where the work does not involve a fast work pace or strict production demands.  With these restrictions, the ALJ concluded that although Plaintiff could not perform her past relevant work,  Plaintiff could perform the light jobs identified by the vocational expert, including routing clerk, label coder, and mail clerk, and that these jobs existed in significant numbers in the local, state, and national economies. Consequently, the ALJ determined that Plaintiff was not entitled

to benefits.

### VI. Plaintiff's Statement of Specific Errors

In her statement of specific errors, Plaintiff raises these issues: (1) the ALJ did not properly evaluate the opinion of Dr. Turner, a treating source; and (2) the ALJ did not properly apply Social Security Rule 06-3p to the opinion of Mr. Warren.  These issues are evaluated under the following legal standard.

Standard of Review.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

### A. Dr. Turner's Opinion

Plaintiff first asserts that the ALJ did not properly

-9-

evaluate Dr. Turner's opinion, which, if accepted, would lead to a finding of disability. In particular, she argues that the ALJ did not cite to specific inconsistencies between that opinion and the medical evidence and did not provide good reasons for discounting it. The analysis of this issue begins with an examination of the ALJ's stated rationale for refusing to give this opinion controlling weight.

First, the ALJ assigned "significant weight" to the opinions of the state agency reviewers based on their familiarity with the Social Security disability program and because they are "consistent with and well supported by the evidence of the record as a whole ...." (Tr. 95). He then assigned little weight to Dr. Turner's opinion, explaining his decision this way:

> The claimant's treating physician, Dr. Marsha Turner, offered a medical source statement in August 2013 (Exhibit 33F). Her opinion is assigned little weight. The opinion is quite restrictive, but offers no specific findings to support such restrictions. Overall, the opinion is far more limiting than what is supported by the medical record, which ultimately shows the claimant has subjective tenderness with good strength and range of motion. Furthermore, Dr. Turner is a primary care physician and is not Board Certified in orthopedics, neurological, or physical medicine.

(Tr. 95). Later in the administrative decision, the ALJ discussed Plaintiff's subjective complaints of disability due to her right shoulder impairment, and found that there was not sufficient medical evidence to substantiate her testimony. He cited to treatment notes indicating a lack of gross weakness or instability following the 2011 rotator cuff surgery, and also good range of motion and strength. He also noted some inconsistencies in the report of numbness and tingling, minimal objective findings with respect to the cervical spine, and only mild tenderness to palpation. Plaintiff does not challenge the ALJ's credibility finding.

-10-

The law in this area is clear. A treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once. 20 C.F.R. §404.1527(c); see also Lashley v. Secretary of H.H.S., 708 F.2d 1048, 1054 (6th Cir. 1983); Estes v. Harris, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981). However, in evaluating a treating physician's opinion, the Commissioner may consider the extent to which that physician's own objective findings support or contradict that opinion. Moon v. Sullivan, 923 F.2d 1175 (6th Cir. 1990); Loy v. Secretary of HHS, 901 F.2d 1306 (6th Cir. 1990). The Commissioner may also evaluate other objective medical evidence, including the results of tests or examinations performed by non-treating medical sources, and may consider the claimant's activities of daily living. Cutlip v. Secretary of HHS, 25 F.3d 284 (6th Cir. 1994). No matter how the issue of the weight to be given to a treating physician's opinion is finally resolved, the ALJ is required to provide a reasoned explanation so that both the claimant and a reviewing Court can determine why the opinion was rejected (if it was) and whether the ALJ considered only appropriate factors in making that decision. Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004).

The Court begins with the argument that the ALJ committed an "articulation error" - that is, that even if the record contained enough evidence to discount Dr. Turner's opinion, the ALJ did not provide an adequate explanation of his decision-making process, particularly as to the conflicting medical evidence. It is true that the general phrase that a treating source opinion is "inconsistent with the evidence" is not specific enough to allow either the Court or the Plaintiff to understand what evidence the ALJ is relying upon. See, e.g., Mercer v. Comm'r of Social Security, 2013 WL 3279260, *7 (S.D. Ohio June 27, 2013), adopted and affirmed 2014 WL 197874 (S.D. Ohio Jan. 15, 2014). And it is

also true that the ALJ's discussion of Dr. Turner's opinion is not very detailed.  However, it provides two reasons for giving the opinion little weight - that Dr. Turner is essentially a general practitioner rather than a specialist, and that the medical records do not support her opinions because they report more subjective than objective findings.  That statement, coupled with the later discussion about those records and the specific objective findings contained in them, is enough to permit the Court to understand and evaluate the ALJ's decision, and to advise Plaintiff why the ALJ did not accept Dr. Turner's views.  Those are the two purposes behind the applicable regulation, 20 C.F.R. §416.927(c).  See Hall v. Comm'r of Social Security, 148 Fed.Appx. 456, 461-62 (6th Cir. 2005).  Consequently, there is no reversible articulation error in this case.

   Plaintiff's other argument is that the reasons given by the ALJ do not adequately support his decision.  She asserts that the primary basis given for assigning little weight to Dr. Turner's opinion was the conflict with the state agency reviewers, and that the ALJ did not give enough consideration to the longitudinal treating relationship.  She also argues that he improperly emphasized Dr. Turner's lack of specialization but failed to note that neither of the state agency reviewers were specialists in the field of orthopedic medicine (one was an emergency room physician and the other was a pediatrician).

   As the Commissioner correctly points out, the ALJ's two primary reasons for discounting Dr. Turner's opinion were the lack of supporting reasons (and the form she completed did not contain any) and the inconsistency with the medical evidence, particularly the records which reported more subjective than objective findings.  These are both supported by the record.  The ALJ was clearly aware of the longitudinal treating relationship but also the fact that, for the conditions which Plaintiff claimed were disabling, Dr. Turner had referred Plaintiff to

other specialists. Further, it is true that Dr. Turner is not an orthopedic or mental health specialist. While the fact that the two state agency physicians may not have been orthopedic specialists is a factor that the ALJ might have considered more explicitly, the Court cannot say that the ALJ did not assert reasons, supported by the record, for declining to adopt Dr. Turner's extremely restrictive view of Plaintiff's physical capacity or for adopting the evaluations of the state agency reviewers because they were more consistent with the records. See Ruby v. Colvin, 2015 WL 1000672, *3 (S.D. Ohio March 5, 2015)(affirming ALJ's reliance on state agency reviewers whose opinions were "consistent with objective medical evidence of record"). Consequently, there is no error in the ALJ's decision to accord only little weight to Dr. Turner's opinions.

### B. The Counselor Opinion

The other issue raised in Plaintiff's statement of errors deals with the functional capacity evaluation done by her counselor, Mr. Warren. He, too, concluded that Plaintiff had limitations which were incompatible with the ability to work on a sustained basis. This is what the ALJ had to say about his opinion:

> In July 2013 the claimant's counselor, Mr. Todd Warren, completed an assessment of the claimant's mental residual functional capacity .... A licensed professional counselor ("LPC") is not an "acceptable medical source" as defined in 20 C.F.R. 416.913.... [T]he opinion is considered only to the extent that it helps understand how an impairment affects the ability to work.
>
> I have considered these observations, consistent with the above-cited regulations and SSR 06-3p. Mr. Warren's opinions on this assessment are assigned little weight. With a few exceptions, Mr. Warren concluded that the claimant had "extreme" limitations in nearly every functional area listed on the assessment form. This conclusion is not supported by or consistent with the medical evidence of record. Mr.

>   Warren did not provide specific findings to support his
>   opinion.  Instead, it appears Mr. Warren relied quite
>   heavily on the claimant's subjective reports.  However,
>   as described elsewhere in this decision, the claimant's
>   reports are not entirely credible.

(Tr. 95).  The ALJ went on to discuss the opinions of the two consultative examiners, giving both "some" weight as consistent with the finding that Plaintiff needed a static work environment and could only perform simple repetitive tasks, and he also assigned great weight to the GAF scores indicating a moderate level of impairment.  Ultimately, the ALJ adopted the opinions of the state agency reviewers on this issue as well, again making an (unchallenged) finding that Plaintiff's description of her psychologically-based symptoms was not entirely credible.  Plaintiff contends that the ALJ erred by mis-stating the legal standard under which opinions like Mr. Warren's must be reviewed.

   Contrary to Plaintiff's assertion, the ALJ both cited the correct regulation, 20 C.F.R. §416.913, and accurately described its content.  That regulation lists providers who are "acceptable medical sources" and Mr. Warren, as a counselor, is not one of them.  It then states that the ALJ may use evidence from "other sources" to "show the severity of your impairment(s) and how it affects your ability to work."  That is exactly how the ALJ explained this regulation in his decision.

   Plaintiff argues, however, that the ALJ erred by not evaluating Mr. Warren's opinion using the factors set out in 20 C.F.R. §416.927(c).  Under SSR 06-3p (also cited by the ALJ), such "other" source opinions "may" be used by an ALJ and an ALJ "can" use the §416.927(c) factors when evaluating such an opinion; as the regulation states, "it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the

-14-

Case: 2:15-cv-02351-JLG-TPK Doc #: 19 Filed: 04/14/16 Page: 15 of 16  PAGEID #: 1235

degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion." In addition, "the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."

Since there is no heightened duty on the part of an ALJ to explain his or her reasoning about non-medical source opinions, the Court's review of that reasoning is limited. If it appears from the record that the ALJ properly understood the controlling law and had a substantial basis for reaching the conclusion reflected in the administrative decision, the Court cannot overturn that conclusion.

That is what happened here. The ALJ's decision makes clear that after he identified Mr. Warren's opinion as not coming from an acceptable medical source, he nonetheless considered it in light of some of the relevant factors, including its consistency with the other evidence of record, the level of support provided by Mr. Warren, and the fact that Mr. Warren relied heavily on Plaintiff's subjective reporting which the ALJ found to be less than fully credible. There is no indication that the ALJ misunderstood his ability to do that type of analysis, and Plaintiff has not (and cannot) make the argument that the Court should substitute its weighing of the evidence for that of the ALJ. As the Court did in <u>Speakes v. Comm'r of Social Security</u>, 2015 WL 4480562, *7 (S.D. Ohio July 22, 2015), <u>adopted and affirmed</u> 2015 WL 4776696 (S.D. Ohio Aug. 14, 2015), the Court finds here that "the ALJ did not deviate from this regulation, and that he adequately described his reasoning process with respect to the weight afforded to [the non-medical] opinion."

-15-

Consequently, there was no error in the way that the ALJ dealt with Mr. Warren's opinion.

### VII.  Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be overruled and that judgment be entered in favor of the Defendant Commissioner.

### VIII.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a _de novo_ determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation _de novo_, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See _Thomas v. Arn_, 474 U.S. 140 (1985); _United States v. Walters_, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge